Benno Ashrafi, Esq. (CSBN 247623)
Leonard Sandoval, Esq. (CSBN 273992)
WEITZ & LUXENBERG, P.C.
1880 Century Park East, Suite 700
Los Angeles, California 90067
Tel.: (310) 247-0921
Fax: (310) 786-9927

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SCLAFANI, an individual; and PATRICIA ANN SCLAFANI, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, a subsidiary of AMPCO-PITTSBURGH CORPORATION, individually and as successor by merger to BUFFALO PUMPS, INC., individually and as successor in interest to BUFFALO FORGE COMPANY; et al.,<br><br>Defendants. | Case No.: 2:12-cv-03013-SVW (PJWx)<br><br>Assigned for All Purposes To :<br>The Honorable Stephen V. Wilson<br>Court Room: 6-2nd Floor<br>Los Angeles, Spring Street<br><br>**PLAINTIFFS'** *AMENDED* **MOTION IN LIMINE TO EXCLUDE EXPERT OPINION EVIDENCE THAT CHRYSOTILE ASBESTOS DOES NOT CAUSE MESOTHELIOMA OR, IN THE ALTERNATIVE, FOR HEARING UNDER <u>DAUBERT V. MERRELL DOW PHARMS., INC.</u>, AND FRE 702 & 703**<br><br>(No. 10)<br><br>Pretrial Conference: May 13, 2013<br>Trial Date:                May 14, 2013 |

-1-

# INTRODUCTION

Plaintiffs David and Patricia Ann Sclafani ("Plaintiffs") hereby move this Court, pursuant to **Daubert v. Merrell Dow Pharms., Inc.,** 509 U.S. 579 (1993) and Rules 702 and 703 of the Federal Rules of Evidence, to preclude Defendants and their experts, from offering speculative testimony regarding the quantification of asbestos fiber potency, including but not limited to any opinions that each and every exposure to chrysotile asbestos does not increase a person's risk of asbestos disease and more specifically does not increase ones risk for mesothelioma.

Defendants' medical causation experts include: Dr. Victor Roggli and Dr. Michael Graham (See Rule 26(f) Report ("Expert Report") of the above defense causation experts, collectively attached to the declaration of Leonard Sandoval ("LS Decl.") in support of this motion, as Exhibit "1", as follows: Expert Report of Victor Roggli (Exhibit "1a"); Expert Report of Michael Graham (Exhibit "1b")). None of these expert reports cite to factual or scientific foundation sufficient for this Court to allow their opinions regarding the inability of chrysotile asbestos to cause mesothelioma to be admitted at trial.

In contrast, Plaintiff's medical causation experts, Dr. Barry Horn and Dr. Arnold Brody have set forth their opinions that chrysotile asbestos is causative for mesothelioma and that each and every dose of chrysotile asbestos, as well as all of the asbestos varieties, increases the risk of an individual ultimately contracting mesothelioma. Plaintiffs' causation experts further have provided a foundation for those opinions in their Expert Reports. The foundation for these opinions is clearly outlined in Plaintiffs' Expert Reports. (See Plaintiffs medical causation Expert Reports, collectively attached to the LS Decl. as Exhibit "2" as follows: Report of Dr. Barry Horn (Exhibit "2a"); and Report of Dr. Arnold Brody (Exhibit "2b"). Plaintiff's expert reports establish, without question, that the generally accepted

scientific conclusion of experts around the world is that exposure to chrysotile asbestos at any dose above the background rate increases ones risk of contracting mesothelioma.

## I. BACKGROUND

It is widely accepted in the scientific community that asbestos in all its forms causes all forms of asbestos related disease, including mesothelioma. Recently, the highly esteemed and authoritative International Agency for Research on Cancer (IARC) completed what is arguably the most comprehensive review of asbestos literature in world history, and reconfirmed their long held position that that all types of asbestos, including chrysotile and amphiboles, causes all forms of asbestos related disease, including mesothelioma of both the pleura and the peritoneal cavity. (See IARC Report attached as Exhibit "3" to the LS Decl.). Cases of both pleural and peritoneal mesothelioma have been uncovered in almost all populations of asbestos exposed workers studied.

Each and every scientific group who has studied this issue has agreed with IARC that the existing scientific studies, including without limitation, in vitro cell studies, animal studies, case reports and epidemiologic studies, demonstrate that all forms of asbestos cause all forms of asbestos related disease in a dose-dependent manner and that therefore there is no safe level or threshold of acceptable exposure to any type of asbestos fiber below which the risk of contracting mesothelioma will not occur. (See Exhibits "2a": pages 27 and 28; and Exhibit "2b" pages 20-22 paragraphs 44-46, and the references therein, setting forth the agencies from around the world who have concluded that chrysotile asbestos at any dose above background contributes to the risk of mesothelioma).

The Government Agencies which hold that chrysotile asbestos in any dose increases ones risk for asbestos disease, as referenced in Plaintiffs' Expert Reports include, but are not limited to, the U.S. Environmental Protection Agency (EPA), the

U.S. Dept. of Labor Occupational Safety and Health Administration (OSHA), the National Institute of Occupational Safety and Health (NIOSH), the Agency for Toxic Substances and Disease Registry (ATSDR), the World Health Organization (WHO), the World Trade Organization (WTO), the U.S. Consumer Products Safety Commission (CPSC), the American Cancer Society, the National Toxicology Program, the National Academy of Sciences, the Helsinki Consensus, the European Union, the National Cancer Institute, and the Surgeon General of the United States of America. All of these groups recognize that there is no scientifically established "safe" level of exposure to all of the asbestos varieties, including chrysotile asbestos.

These findings of various governmental agencies around the world are based upon a review of the scientific literature and results of various forms of scientific research which has consistently found that chrysotile is a strong carcinogen, that through the breathing and ingestion of asbestos from work practices which release asbestos into the air, chrysotile asbestos is able to reach the target site for mesothelioma, including the pleura and the peritoneal cavities, and that epidemiological studies show that exposure to chrysotile asbestos increases ones risk for mesothelioma. Defendants' causation experts present no evidence or explanation as to why their opinions are contrary to the findings of each of these various governmental organizations around the world. They merely ignore them stating nothing in their reports to contradict the findings of these important governmental bodies.

Plaintiffs' experts, in contrast, rely upon the same evidence of causation of mesothelioma by exposure to chrysotile as the listed agencies. Dr. Brody has participated in and is a leader in animal research related to asbestos disease. He cites in his expert report to his own work and the work of others establishing, without scientific question, that asbestos in in-vitro studies and in animal studies has been proven to be both highly carcinogenic. (Exhibit 2b pgs. 9-11, paragraphs 17-18 and

-4-

**PLAINTIFFS' *AMENDED* MOTION IN LIMINE TO EXCLUDE EXPERT OPINION EVIDENCE THAT CHRYSOTILE ASBESTOS DOES NOT CAUSE MESOTHELIOMA OR, IN THE ALTERNATIVE, FOR HEARING UNDER <u>DAUBERT V. MERRELL DOW PHARMS., INC.</u>, AND FRE 702 & 703**

pgs. 19-22 paragraphs 40-46). Further he has and also through his work and his review of other scientists work determined that inhalation and ingestion of chrysotile fibers results in such fibers reaching the target sites for mesothelioma, included the pleural cavity. (See Exhibit 2b pgs. 9-11 paragraphs 17-18). None of the defense causation experts disagree with these findings.

It is the undisputed opinion of scientists around the world that chrysotile asbestos is carcinogenic. Even Defendants' experts have testified in the past that chrysotile asbestos is carcinogenic and causes the disease which Mr. Sclafani suffers from, pleural mesothelioma. (See Exhibit 4 to the LS Decl. excerpts of testimony from Defense expert Dr. Roggli stating under oath that chrysotile asbestos is a cause of mesothelioma). Defense expert, Victor Roggli further has testified, in declaration form, as recently as 2005, that each and every exposure to asbestos of all fiber types contributes to the risk of mesothelioma. (See Exhibit 5 to the LS Decl. a declaration under penalty of perjury by Dr. Victor Roggli).

Further, Dr. Horn in his Expert Report sets forth his opinion on this issue and further sets forth the basis upon which he has made this determination based upon articles which he has reviewed that show epidemiologically that exposure to chrysotile asbestos increases ones risk for mesothelioma. (See exhibit "2a" Pg. 42-43). The referenced studies show an increased risk for mesothelioma from exposure to pure chrysotile asbestos. Dr. Horn also references many case studies and his own work with patients as a basis for his opinion that individuals exposed to low dose chrysotile asbestos are at an increased risk for mesothelioma. (See exhibit "2a" Pg. 42-43). Defendants experts set forth no specific reasons based upon research or studies which can support their opinion that exposure to chrysotile asbestos does not increase a person's risk for mesothelioma.

Defendants experts, in their Expert Reports have not disputed the findings of health agencies around the world, they have not stated that chrysotile asbestos is not

-5-

carcinogenic, nor have they opined that chrysotile asbestos does not reach the target cite for causing mesothelioma. Defendants' causation experts have not explained how, given the nature of how asbestos causes cancer, why each and every exposure to any asbestos does not present a risk of causing genetic damage and contributing to the DNA errors which lead to cancer. They present no basis from which they can opine that there is no increased risk from exposure to chrysotile asbestos. Defendants and their experts claim, in their Expert Reports, without foundation, that chrysotile asbestos does not cause mesothelioma generally and does not cause mesothelioma of the pleural cavity specifically. These opinions are not supported by the scientific community, are not supported by a scientific foundation and should therefore be excluded by this Court.

## II. LEGAL AUTHORITY

Scientific evidence is admitted pursuant to Federal Rule of Evidence 702. In Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 587-89, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court held that Rule 702 displaced the prior "general acceptance" test. This is accomplished through a preliminary determination that the proffered evidence is both relevant and reliable. Scientific evidence is reliable if it is based on an assertion that is grounded in methods of science-the focus is on principles and methodology, not conclusions. Id. at 595-96, 113 S.Ct. 2786. The Supreme Court listed four non-exclusive factors for consideration in the reliability analysis: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community. Id. at 593-94, 113 S.Ct. 2786.

In Daubert II, 43 F.3rd 1311, 1317 (9th Circ. 1995) we noted that a "very significant fact to be considered is whether the experts are proposing to testify about

-6-

matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." 43 F.3d at 1317. If the evidence is not based upon independent research, the district court must determine whether there exists any "other objective, verifiable evidence that the testimony is based on scientifically valid principles." Id. at 1317-18. In this case, each of the articles and studies relied upon by the defense causation experts stems from experts who testify in asbestos litigation or which has been funded by Defendants in asbestos litigation. Peer review is the chief way of satisfying this requirement, though it may also be met by precisely [explaining] how [the experts] went about reaching their conclusions and point[ing] to some objective source-a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like-to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field. Id. at 1318-19 (citing United States v. Rincon, 28 F.3d 921, 924 (9th Cir.1994)); As cited in *Metabolife Intern., Inc. v. Wornick* 264 F.3d 832, 840 -841 (C.A.9 (Cal.),2001)

In order to be admissible under *Daubert*, expert testimony must be both relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). To be relevant, the opinion must "fit" the case, meaning that it must inform, and be helpful in resolving, the question before the Court. *Daubert*, 509 U.S. at 591 (ruling that "[e]xpert testimony which does not relate to any issue in the case is not relevant, and, ergo, non-helpful") (citation omitted). To be reliable, the expert's opinions must be based on a reliable method. *In re TMI Litig.*, 193 F.3d 613, 662-64 (3d Cir. 1999) (proffered expert opinion must be reliable); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-42 (3d Cir. 1994) (method used must be reliable).

In *Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000), the Third Circuit listed several nonexclusive "*Daubert* factors" that should inform a court's consideration of

whether a particular methodology is reliable. *Id.* at 745-46. These factors include whether the theory or technique has been subjected to peer review and publication, and enjoys "general acceptance" within the relevant scientific community. *Id.*; *see also Daubert*, 509 U.S. at 592-94. In order to assess reliability, the Court must determine whether the expert's conclusions could reliably flow from the facts known to the expert and the methodology used. *See Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999). An opinion must be supported by adequate data in order to be deemed reliable. *TMI*, 193 F.3d at 697 ("If the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded.").

Testimony that is speculative, or based on a speculative foundation, is unreliable and inadmissible, even if the speculation comes from the mouth of an expert instead of a lay witness. In order for expert testimony "to be reliable, and therefore admissible, it must be based on the methods and procedures of science rather than subjective belief or speculation." *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999). *See also* Fed. R. Evid. 702 (expert testimony must be "based upon sufficient facts or data"). In so determining, the court must consider whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

One common characteristic of the methodologies of all of the above groups and of honest individual scientists around the world in evaluating a causal relationship is to look at all of the evidence in reaching a conclusion. All evidence is examined, evaluated and taken into account; no one piece of empirical evidence is ever without its shortcomings, but all of the evidence is evaluated both individually and as it fits into the larger body of evidence. Any generally accepted and reliable methodology follows this canon. Perhaps the most famous and widely-cited

-8-

**PLAINTIFFS' *AMENDED* MOTION IN LIMINE TO EXCLUDE EXPERT OPINION EVIDENCE THAT CHRYSOTILE ASBESTOS DOES NOT CAUSE MESOTHELIOMA OR, IN THE ALTERNATIVE, FOR HEARING UNDER <u>DAUBERT V. MERRELL DOW PHARMS., INC.</u>, AND FRE 702 & 703**

causation methodology in public health is that of Sir Austin Bradford Hill, which is widely cited in both peer-reviewed scientific literature and textbooks for epidemiologists, medical doctors, and other public health professionals. In Hill's famous and generally-accepted methodology, any piece of evidence can be viewed through one of several "viewpoints": no one piece of evidence or point of view reigns supreme, but rather all evidence is analyzed in what some might call a "weight of the evidence" method.

Former Assistant Surgeon General Richard Lemen, Ph.D., wrote a paper specifically using the Hill methodology to analyze why it is generally accepted that chrysotile asbestos causes mesothelioma. (See Exhibit "6" attached to the LS Decl.) No such papers have been forthcoming from defendants' experts because, rather than using sound methodology and sound underlying data, they rely upon unfounded speculation and statistical sleight of hand. In contrast to the world's scientific bodies and respected scientists, defendants and their experts do not use any recognized methodology in making their determination. Rather, they pick and choose a very few isolated studies, most of which are funded by the asbestos industry, and all of which have fatally incomplete data, and jam them into a complex mathematical model. The lack of data is so severe that they have to utilize completely unsupported assumptions as data inputs in order to run the mathematical models. The defense experts unabashedly attempt to rely on these studies, despite the fact that the authors of the studies openly admit that insufficient evidence exists to meaningfully run such models. Further, the models have been uniformly rejected by the agencies for which they were developed. Rather than use an accepted scientific or medical causation methodology, defendants rely on rejected public policy instruments known commonly as quantitative risk assessments.

Federal and California statutory and decisional law requires one essential predicate to expert testimony: It must be based upon reliable matter, as opposed to

-9-

**PLAINTIFFS' *AMENDED* MOTION IN LIMINE TO EXCLUDE EXPERT OPINION EVIDENCE THAT CHRYSOTILE ASBESTOS DOES NOT CAUSE MESOTHELIOMA OR, IN THE ALTERNATIVE, FOR HEARING UNDER <u>DAUBERT V. MERRELL DOW PHARMS., INC.</u>, AND FRE 702 & 703**

speculation or guesswork. Because the great weight of the credible scientific evidence leans heavily towards the "asbestos is asbestos" position of the plaintiffs, the defendants' opinions – which rely on guesses, unsupported assumptions, and the rejection of sound evidence to support their outlier position that Mr. Sclafani's mesothelioma was caused only by someone else's asbestos – is legally insufficient. Neither science nor law has ever blessed "guessing" or baseless "speculation." The opinion that chrysotile asbestos is harmless is limited to courtroom testimony, offered by well-paid defense experts, in asbestos actions.

### III. DEFENDANTS EXPERT REPORTS

The defendants' experts in this case have set forth their expected testimony and the basis for their testimony in their Expert Reports. These Expert Reports state that despite a clear exposure history to Defendants' asbestos containing products, Mr. Sclafani's mesothelioma was not caused by or contributed to by exposure to the asbestos fibers in products manufactured by or supplied by defendants. In forming these outlier opinions, defendants do not rely upon accepted scientific fields such as toxicology, sound industrial hygiene work, cell biology, and epidemiology, but rather on highly speculative mathematically-modeled risk assessments that require guesswork, speculation, and multiple layers of unsupportable assumptions relating to fundamental and critical input data. Of course, such guesswork is not reproducible or in any other sense real science, as is often acknowledged by the authors of these very studies. Rather than look at all of the evidence, defendants rely upon contrived mathematical modeling for which there is grossly inadequate data and which "make up" essential data points to serve their ends. Such models are designed to support the desired result, which is ultimately to blame someone else's asbestos product. As with any computer system or mathematical formula, it is the classic "garbage in, garbage out" result. The empirical data regarding exposure to different forms of asbestos that is needed for such a model to deliver anything approaching a scientific

-10-

result is nonexistent. Because no comparison can be made between exposure levels of differing groups and comparing that to the number of asbestos-related diseases in the groups, any honest attempt to compare exposures confirms that it is an exercise in comparing "apples to oranges", and therefore scientifically meaningless. Even when defendants and their stable of regularly-retained litigation experts dare to stray from their fictional view of causation by looking at the work of mainstream scientists, they refuse to face reality.

### A.  DR. VICTOR ROGGLI'S EXPERT REPORT

Dr. Roggli has produced an Expert Report for two Defendants, including, Goodyear Tire and Rubber Company and Air and Liquid Systems. For each of these Defendants, Dr. Roggli submitted that same report. (See Exhibit "1a"). It consists of two parts, the first admitting that Mr. Sclafani has mesothelioma and it was caused by asbestos exposure and a second part where Dr. Roggli opines that "exposure to chrysotile asbestos from gaskets or packing is unlikely to have been a substantial contributing factor to the development of Mr. Sclafani's mesothelioma". It does not attempt to explain or set forth particulars as to why chrysotile does not cause mesothelioma of the pleural cavity and it set forth no basis for the opinion. Dr. Roggli cites only to two articles to support his opinion, with no explanation of how he comes to his conclusion. He further does not address the fact that he has previously testified that exposure to chrysotile asbestos in fact causes mesothelioma and that each and every dose of asbestos, above the background exposures, increases ones risk for mesothelioma. (See Exhibits 4 and 5 to the LS Decl.) The Dodson analysis referenced as a reference regarding this opinion has been rejected by the scientific community and is not a proper scientific paper so as to be relied upon. (see discussion below). As such, Dr. Roggli's report fails to supply sufficient foundation for an opinion that exposure to chrysotile does not contribute to ones risk for contracting mesothelioma.

-11-

PLAINTIFFS' *AMENDED* MOTION IN LIMINE TO EXCLUDE EXPERT OPINION EVIDENCE THAT CHRYSOTILE ASBESTOS DOES NOT CAUSE MESOTHELIOMA OR, IN THE ALTERNATIVE, FOR HEARING UNDER <u>DAUBERT V. MERRELL DOW PHARMS., INC.</u>, AND FRE 702 & 703

B. **DR. MICHAEL GRAHAM**

Dr. Michael Graham has submitted Expert Reports on behalf of Crane Co. The reports are the same for each Defendant. His report consists of four pages of narrative without one reference to any study, learned treatise or any other source for his opinions. He merely states in his report that: "In contrast to amphibole asbestos, chrysotile dust (including any contaminating amphibole) is a weak human pleural carcinogen. Pleural malignant mesotheliomas related to the inhalation of chrysotile dust, such as those occurring among Canadian chrystotile miners and millers, are characteristically associated with prolonged heavy exposures. There is accumulating scientific information that these tumors are caused by a contaminating amphibole (most commonly tremolite) rather than the chrysotile fibers. There are occupational cohorts exposed exclusively to chrysotile dust in which no increased incidence of malignant mesothelioma has been demonstrated."

Dr. Graham does not cite to one article or basis for his opinion. He has never published in the area of asbestos disease and has never participated in his own research regarding this issue. There is no study or paper cited for any of his propositions. He is without foundation for the opinions given in his Expert Report. Dr. Graham should be excluded from offering any opinions as to this issue.

C. **BERMAN AND CRUMP**

Defendants rely upon the 2003 Berman & Crump risk assessment as a basis for their opinions that there is a significant difference in toxicity between chrysotile asbestos and amphibole asbestos. This paper was prepared by Berman and Crump for the EPA. (See Exhibit "7" to the LS Decl.) However, the EPA has specifically disclaimed the adoption of the 2003 Berman & Crump risk assessment. (See Exhibit "8" to the LS Decl.) In fact, in the summer of 2008, the EPA retained an expert panel to review an even newer version of the Berman & Crump approach sometimes referred to as "Brattin Crump". (See Exhibit "9" to the LS Decl.) In its report to the

EPA, the panel stated that there was inadequate information existing in the scientific literature to quantity any difference in the potency of various types and fiber sizes of asbestos. (See Exhibit "10" to the LS Decl.) Even author Wayne Berman submitted a public comment to that EPA project, admitting that the input data needed for such a model does not exist at this time, as the world's scientific literature is "insufficiently rich" to support their conclusions. (See Exhibit "11" to the LS Decl.) Because these studies are so unfounded and unsupported by real world data, the EPA has twice refused to adopt this approach, first rejecting the 2003 Berman & Crump study and then rejecting the 2008 Brattin Crump risk assessments.

In 2003, Berman and Crump's *Final Draft: Technical Support Document for a Protocol to Assess Asbestos-Related Risk*, EPA 9345 (2003) was evaluated by an EPA peer consultation panel which "made a number of important recommendations that must be addressed before the method can be used for EPA risk assessments." (See Exhibit "12" to the LS Decl.) Several years later, EPA-Region IX noted that the Berman and Crump method "will not be adopted by EPA as a risk assessment. (See Exhibit "13" to the LS Decl.) In the Spring of 2008, William J. Brattin submitted his repackaging of the Berman and Crump formula and data to the EPA in his *Proposed approach for estimation of bin-specific cancer potency factors for inhalation exposure to asbestos*, U.S. EPA, Office of Solid Waste and Emergency, Contract GS-OOF-OO19L, June 12, 2008. (See Exhibit "14" to the LS Decl.)

Noting that the studies comprising this "supporting database" are "insufficiently rich," Berman recommended that the EPA "highlight[]" in its Scientific Advisory Board report "the severe pitfalls of conducting a meta analysis over a set of studies that are insufficiently rich to test the hypotheses of interest . . . ." *Id.* Berman further explained:

> Perhaps the most critical issue associated with a meta-analysis . . . is its dependence on the input data. If a data set

-13-

**PLAINTIFFS' *AMENDED* MOTION IN LIMINE TO EXCLUDE EXPERT OPINION EVIDENCE THAT CHRYSOTILE ASBESTOS DOES NOT CAUSE MESOTHELIOMA OR, IN THE ALTERNATIVE, FOR HEARING UNDER DAUBERT V. MERRELL DOW PHARMS., INC., AND FRE 702 & 703**

> is insufficiently rich to provide adequate power to test hypotheses of interest, this may not be readily apparent, but its use may result in findings that do not adequately reflect reality.

*Id.* at 2-3. Berman concluded that "it is clear by visual inspection that none of the metrics we were able to evaluate with existing data entirely reconcile all of the observed variation across studies." *Id.* at 3.

Other authoritative bodies have also deemed Brattin's risk assessment inherently unreliable and fundamentally flawed. The Collegium Ramazzini, an international academic society comprised of 180 physicians and scientists from 30 countries that examines critical issues in occupational and environmental medicine and is dedicated to the prevention of disease and the promotion of health, recommended that the EPA reject Brattin because it "contains significant and fundamental flaws and . . . the results will be completely unreliable and subject to misuse and abuse." (See Exhibit "15" to the LS Decl.)

In a statement calling for an international ban on asbestos, the Collegium wrote:

> Early indications that chrysotile might be less dangerous than other forms of asbestos have not held up. The preponderance of scientific evidence to date demonstrates that chrysotile too causes cancer, including lung cancer and mesothelioma. Canadian chrysotile that is amphibole-free still is associated with mesotheliomas.

Ultimately, the science advisory board concluded, as the EPA itself had in 1986, that the attempt to quantify any differences in the relative risk of fiber type to cause mesothelioma or lung cancer was "weak and unsubstantiated" given the available data. The EPA itself agreed with this assessment in a subsequent letter to the SAB

**PLAINTIFFS'** *AMENDED* **MOTION IN LIMINE TO EXCLUDE EXPERT OPINION EVIDENCE THAT CHRYSOTILE ASBESTOS DOES NOT CAUSE MESOTHELIOMA OR, IN THE ALTERNATIVE, FOR HEARING UNDER <u>DAUBERT V. MERRELL DOW PHARMS., INC.</u>, AND FRE 702 & 703**

Chair.

Based upon the above rejection of the Berman and Crump data, opinions regarding the relative toxicity of the fiber types have proven to be so speculative as to prevent using those models as a basis for any opinion that chrysotile asbestos does not cause or contribute to mesothelioma. As a result, defendants' causation experts should be prohibited from relying upon this junk science as a foundation for their unsupported opinions that chrysotile asbestos does not contribute to the risk for mesothelioma.

## IV. CONCLUSION

For the following reasons, the Court should grant Plaintiffs' Motion in Limine No. 10 prohibiting the introduction of any expert testimony or evidence to suggest that exposure to chrysotile asbestos does not contribute to a person's increased risk of mesothelioma.

Dated: May 12, 2013

WEITZ & LUXENBERG, P.C.

By _____
Brent Zadorozny
Leonard Sandoval
Attorney for Plaintiffs

-15-

PLAINTIFFS' *AMENDED* MOTION IN LIMINE TO EXCLUDE EXPERT OPINION EVIDENCE THAT CHRYSOTILE ASBESTOS DOES NOT CAUSE MESOTHELIOMA OR, IN THE ALTERNATIVE, FOR HEARING UNDER DAUBERT V. MERRELL DOW PHARMS., INC., AND FRE 702 & 703

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 2

II. BACKGROUND ................................................................................................. 3

III. LEGAL AUTHORITY ....................................................................................... 6

IV. DEFENDANTS EXPERT REPORTS ............................................................. 10

   A. DR. VICTOR ROGGLI'S EXPERT REPORT ........................................ 11

   B. DR. MICHAEL GRAHAM ....................................................................... 12

   D. BERMAN AND CRUMP ......................................................................... 12

V. CONCLUSION ................................................................................................ 15

**PLAINTIFFS' *AMENDED* MOTION IN LIMINE TO EXCLUDE EXPERT OPINION EVIDENCE THAT CHRYSOTILE ASBESTOS DOES NOT CAUSE MESOTHELIOMA OR, IN THE ALTERNATIVE, FOR HEARING UNDER <u>DAUBERT V. MERRELL DOW PHARMS., INC.</u>, AND FRE 702 & 703**

# TABLE OF AUTHORITIES

Cases

Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) .................................. 2, 6, 7

Elcock v. Kmart Corp., 233 F.3d 734 (3d Cir. 2000) .................................................. 8

Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999) .................................. 8

In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-42 (3d Cir. 1994) ...................... 8

In re TMI Litig., 193 F.3d 613, 662-64 (3d Cir. 1999) ............................................ 8, 9

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) ................................ 7

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) ................................ 9

Metabolife Intern., Inc. v. Wornick 264 F.3d 832, 840 -841 (C.A.9 (Cal.),2001 .......... 7

United States v. Rincon, 28 F.3d 921, 924 (9th Cir.1994) ........................................ 7

Statutes

Federal Rules of Evidence Section 702 ........................................................................ 8

**PLAINTIFFS' *AMENDED* MOTION IN LIMINE TO EXCLUDE EXPERT OPINION EVIDENCE THAT CHRYSOTILE ASBESTOS DOES NOT CAUSE MESOTHELIOMA OR, IN THE ALTERNATIVE, FOR HEARING UNDER <u>DAUBERT V. MERRELL DOW PHARMS., INC.</u>, AND FRE 702 & 703**

# CERTIFICATE OF SERVICE

*David Sclafani, et al. v. Air and Liquid Systems Corporation, et al.*
United States District Court - Central District of California
Case No.: 2:12-cv-03013-SVW-PJWx

I, CHRISTOPHER KASL, declare,

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action. My business address is 1880 Century Park East, Suite 700, Los Angeles, California 90067.

On the date executed below, I electronically served the document(s) entitled:

**PLAINTIFFS'** *AMENDED* **MOTION IN LIMINE TO EXCLUDE EXPERT OPINION EVIDENCE THAT CHRYSOTILE ASBESTOS DOES NOT CAUSE MESOTHELIOMA OR, IN THE ALTERNATIVE, FOR HEARING UNDER DAUBERT V. MERRELL DOW PHARMS., INC., AND FRE 702 & 703**

on interested parties in this action by:

☒ **ELECTRONIC COURT FILING (EFC):** the above-entitled document to be served electronically though the United States District Court, Central District ECF website, addressed to all parties appearing in the Court's ECF service list. A copy of the "Filing Receipt" PAGE will be maintained with the original document in our office.

☒ I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed this 12th day of May, 2013, in Los Angeles, California.

*/s/ Christopher Kasl*
CHRISTOPHER KASL

CERTIFICATE OF SERVICE